# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| RICHARD TYLER VANNEWHOUSE, and RICHARD KIRK VANNEWHOUSE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CV424-006 |
| JIMMY MCDUFFIE, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATIONS

Before the Court is Defendants' Motion for Summary Judgment. Doc. 34. The motion has been fully briefed and is ripe for review. Docs. 34, 45, 46, & 48.

## Background[1]

This case revolves around the investigation of a traffic violation, the arrests that followed, and the use of force involved in making one of those arrests. On December 5, 2021, Richard Tyler Vannewhouse ("Tyler" or "Tyler Vannewhouse"), while driving a van, closely followed a car operated by Audrey Erskine, prompting her to call 911. Doc. 34-13 at 1-

---

[1] The factual recitation is based, in substantial part, on Plaintiffs' admissions. The reasons for, and impact of, those admissions are discussed more fully below.

2.  Following Erskine's call, Effingham County Sheriff's deputy Zachary Brooks was dispatched to the scene.  *Id*. at 2.  Before Brooks arrived at the scene, Tyler returned to his residence, parked his van behind a shed in the backyard, and proceeded to hide from law enforcement officials near a set of railroad tracks.  Doc. 34-1 at 1-2.

Deputy Brooks was informed that the owners of the van lived at 226 Rosehill Drive.  Doc. 34-13 at 2.  He travelled there to search for the vehicle and looked around the yard to no avail.  *Id*.  During the investigation, Richard Kirk Vannewhouse ("Kirk" or "Kirk Vannewhouse"), Tyler's father, emerged from the house.  *Id*.  Brooks informed Kirk that he was searching for a white van, which Kirk acknowledged was supposed to be at the house.  *Id*.  Kirk also told Brooks that Tyler was "gone" and likely was not coming back.  *Id*.  Kirk knew this statement was false, as he knew that Tyler had returned to the residence and was hiding behind the house.  *Id*.  During this conversation, Kirk began speaking with Tyler over the phone.  *Id*.  Brooks asked Kirk to tell Tyler to return to the residence, but Kirk refused.  *Id*. at 3.  Brooks asked Kirk for Tyler's location, but Kirk refused to provide it.  *Id*.  Kirk repeatedly stated that he would not help Brooks locate Tyler

nor provide him with any other information. *Id*. After Kirk refused multiple orders, Brooks arrested Kirk for obstruction of a law enforcement officer. *Id*. Kirk has admitted that this arrest was justified. *See* doc. 34-2 at 2, ¶ 8.

Following Kirk's arrest, Brooks spoke with Tyler on the phone. Doc. 34-13 at 3. Tyler said that he was "not coming back" and that he was "far away" on the other side of the train track that ran behind the residence. *Id*. Around this time, Effingham County Sheriff's deputies Steven Davis, Max Barber, and John Preston Morris, III, arrived. *Id*. After the phone conversation with Tyler concluded, the officers began to investigate the area behind the house. *Id*. They observed a light coming from the railroad tracks. *Id*. at 4. As they approached, the deputies found Tyler standing atop the tracks. *Id*.

Brooks and Barber attempted to handcuff Tyler while Davis and Morris stood back. Doc. 34-13 at 4. Before the handcuffs were secured, Tyler snatched his hands away and began fighting with the deputies. *Id*. The deputies "maneuvered" Tyler to the ground in an effort to gain compliance. *Id*. Tyler, still not handcuffed, continued his fight against the deputies, who held him down in another attempt to gain compliance.

*Id.* The deputies were then able to successfully handcuff Tyler. *Id.* at 5. They began walking Tyler to the residence as he screamed profanities, repeatedly tried to pull away, and actively fought the deputies. *Id.* The deputies again "guided" Tyler to the ground to regain control of the situation. *Id.* Tyler wildly kicked his legs as he fought the deputies. *Id.* At one point, Tyler turned his lower body nearly 90 degrees and kicked Deputy Morris' K9 Unit in the face. *Id.* The kick caused the police dog to bite Tyler in the left foot. *Id.* Deputy Morris did not deploy the dog to bite Tyler and acted as quickly as possible to remove it after the bite. *Id.* Tyler has admitted that the deputies did not "beat" him in any way and their use of force was objectively reasonable under the circumstances. *See* doc. 34-1 at 3. Tyler suffered a puncture wound to his left foot but no other injuries. Doc. 34-13 at 6.

Kirk and Tyler alleged various constitutional and state law violations against the deputies, Sheriff McDuffie, and the Effingham County Board of Commissioners. Doc. 1-1. The only remaining claims, after the District Judge's disposition of Defendants' Motion to Dismiss are: Tyler's excessive force claim against the individual Deputy Defendants (Count I), Kirk's "wrongful arrest" claim against Defendant

Deputy Brooks (Count IX),[2] Plaintiffs' *Monell* claim against Sheriff McDuffie (Count IV), Plaintiffs' emotional distress claim against the individual Deputy Defendants (Count II), Plaintiffs' claim for punitive damages (Count VII), and Plaintiffs' claim for attorney's fees (Count VIII). *See* doc. 20 at 19.

## Legal Standard

The Court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute

---

[2] The Court found that Kirk sufficiently pleaded both a § 1983 Fourth Amendment claim and a false imprisonment claim under Georgia law in Count IX. Doc. 20 at 17. Both will be addressed below.

of those material facts "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court views the record evidence "in the light most favorable to the [nonmovant]," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and will draw all justifiable inferences in the nonmovant's favor, *Anderson*, 477 U.S. at 255. At this stage, "a plaintiff's testimony cannot be discounted . . . unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). That said, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 252.

If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy its burden. *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be

unable to prove its case at trial." *Id.* at 1438 (citing *Celotex Corp.*, 477 U.S. at 331). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted)). If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 324).

If the movant bears the burden of proof at trial, they must show that there is no genuine issue of material fact and that "no reasonable jury could find" for the non-movant "on all the essential elements of its case on which [the movant] bears the burden of proof at trial." *Four Parcels*, 941 F.2d at 1438. If the movant makes that showing, the non-movant must "come forward with significant, probative evidence

demonstrating the existence of a triable issue of fact." *Id*. Otherwise, the movant is entitled to summary judgment. *Id*.

## Discussion

### I.   Plaintiff's Admissions and the Evidentiary Record

On August 9, 2024, Defendants served both Kirk and Tyler Vannewhouse with requests for admission ("RFA") via both e-mail and U.S. Mail. *See* docs. 34-1 & 34-2. Neither Plaintiff provided Defendants with a timely response to the requests for admission. Doc. 34 at 2.[3] Therefore, the subject matter of those requests are deemed admitted and "conclusively established." *See* Fed. R. Civ. P. 36(a)(3), (b); *see also Barton v. Bray & Gillespie III Mgmt. LLC,* 2007 WL 1139482 at *1 (M.D. Fla. Apr. 17, 2007) ("Failure to timely respond to requests for admission results in *automatic* admission of the matters requested."); *United States v. 2204 Barbara Lane*, 960 F.2d 126, 129-30 (11th Cir. 1992) (affirming summary judgment based on opposing party's failure to respond to requests for admissions). To the extent that Plaintiffs' submitted affidavits, docs. 45 & 46, contradict their admissions, the admissions are

---

[3] Notably, neither Plaintiff disputes Defendants' assertion that they failed to timely respond to the Requests for Admission. *See generally* docs. 45 & 46.

dispositive. *See Ret. Care Assocs., Inc. v. F. Healthcare Grp., Inc.*, 2006 WL 8434193 at *4 (N.D. Ga. Apr. 20, 2006) ("Because 'Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record.'" (quoting *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001)).

Defendants' requests seek admission of dispositive issues, as discussed below. *See, e.g.*, doc. 34-1 at 3, ¶ 17 ("Admit that the Effingham County Sheriff's deputies' use of force on Tyler Vannewhouse was objectively reasonable under the circumstances."). While requests for admission may properly reach "the application of law to fact," *see* Fed. R. Civ. P. 36(a)(1)(A), Rule 36 "does not authorize requests for admissions of law unrelated to the facts of the case." Fed. R. Civ. P. 36, Advisory Committee Notes to 1970 Amendment. "Requests that deal with applications of the law to facts that, though they are related to the given case are asked in a way that applies beyond it are likely impermissible, [cit.], whereas requests that apply the legal conclusions to the discrete facts of the given case are more likely permissible." *United States ex rel.*

*Bibby v. Mortg. Invs. Corp.*, 323 F.R.D. 424, 429 (N.D. Ga. 2017) (internal citations omitted).  The Court has reviewed the RFA's served on Tyler and Kirk Vannewhouse, docs. 34-1 & 34-2, and is satisfied that, in the absence of any challenge by Plaintiffs to the scope of the admissions, Defendants properly tailored each RFA requesting the application of law to the discrete facts of this case.  Therefore, all of Plaintiffs' admissions, including those applying law to the facts of the case, should be deemed "conclusively established."

Defendants also argue that the facts enumerated in their Statement of Material Facts are admitted because Plaintiffs have not controverted them or served their own statement, as required by this Court's Local Rules.  Doc. 48 at 3-4 (citing *Thomas v. Elixir Extrusions LLC*, 2019 WL 2664987, at *1 (S.D. Ga. June 27, 2019) (holding that, when the *pro se* plaintiff failed to file any response to defendants' motion for judgment or statement of material facts, the contents of defendants' statement of material facts were deemed admitted)); *see also* S.D. Ga. LR Civ. 56.1.  This case is distinguishable from *Thomas*, however.  Unlike the plaintiff in *Thomas*, who failed to provide any response to the defendants' summary judgment motion, both Plaintiffs here have

submitted affidavits reflecting their interpretations of the relevant facts of this matter. *See* docs. 45 & 46. Given, as discussed above, that the affidavits cannot overcome the conclusive weight of Plaintiffs' admissions, the Court need not determine whether those affidavits are sufficient to controvert Defendants' Statement of Material Facts.

Defendants also contend that, because the docket reflects that Kirk Vannewhouse filed Tyler Vannewhouse's affidavit and "appears to still be litigating on Tyler's behalf," the Court should not give any weight to the contents of Tyler's affidavit. *See* doc. 48 at 5. Despite the docket's notation that the affidavit was "filed" by Kirk, it appears to be signed by Tyler. See doc. 46 at 2. The docket notation may indicate nothing more than that Tyler's affidavit was physically delivered by Kirk. Because the physical delivery of a document to the Clerk by one *pro se* party on another's behalf is not "litigating," the Court declines to exclude the contents of Tyler's affidavit on those grounds. Moreover, as discussed

below, the conclusive effect of both Plaintiffs' admissions render the content of their affidavits—whether properly filed or not—moot.

## II.   Plaintiffs' Constitutional Claims

### a. 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code creates a right of action for vindicating federal rights guaranteed by the Constitution and federal statutes.  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).  To prevail on a § 1983 claim, a plaintiff must establish that "the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156-57 (1978)).

### b. Qualified Immunity

Even when a plaintiff can prove the elements of a § 1983 claim, qualified immunity may nevertheless block the recovery of damages. When successfully invoked, qualified immunity shields government officials who perform discretionary functions from civil liability.  *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000) (citing *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982)). It shields "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted).

"An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within the scope of his discretionary authority, and the burden then shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Ledea v. Metro-Dade Cnty. Police Dep't*, 681 F. App'x 728, 729 (11th Cir. 2017) (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1136-37 (11th Cir. 2007)). An official acts within the scope of his discretionary authority if he performs a legitimate job-related function through means that were within his power to utilize. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the

performance of the official's duties and within the scope of this authority.")).

If the defendant establishes that his relevant conduct fell within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity does not apply under the two-prong test established by the U.S. Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the first prong, the Court determines whether the facts viewed in the light most favorable to the plaintiff "show the officer's conduct violated a constitutional right." *Id.*; *see also Hope v. Pelzer*, 536 U.S. 730, 736 (2002) ("The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."); *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). Second, the Court considers whether the right allegedly violated was clearly established at the time of the violation. *Hope*, 536 U.S. at 739; *Saucier*, 533 U.S. at 201; *Scott*, 550 U.S. at 377; *Underwood v. City of Bessemer*, 11 F.4th 1317, 1328 (11th Cir. 2021) ("[W]e ask two questions: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) if so, whether the right at issue

was clearly established at the time of the defendant's alleged misconduct." (internal quotation marks omitted)).   The Court may analyze these two prongs in any order.  *Pearson v. Callahan*, 555 U.S. 223, 242 (2009); *Underwood*, 11 F.4th at 1328.  Qualified immunity will shield the defendant official from civil liability if a plaintiff fails either prong of the analysis.  *Underwood*, 11 F.4th at 1328.

### c. Tyler Vannewhouse's § 1983 Fourth Amendment Excessive Force Claim (Count I)

Tyler Vannewhouse alleges that the deputy defendants used excessive force against him while arresting him.  Doc. 1-1 at 5.  The Fourth Amendment "encompasses the right to be free from excessive force during the course of a criminal apprehension.  *Corbitt v. Vickers*, 929 F.3d 1304, 1315 (11th Cir. 2019) (quoting *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009)).  To establish a Fourth Amendment claim for excessive force, a plaintiff must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable.  *Id*.  Excessive force claims in the context of an arrest or investigatory stop are judged

under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989).

The deputy defendants have raised qualified immunity as an affirmative defense to Tyler's claim. Doc. 34 at 8-14. "The ability to effectuate an arrest as an on-duty officer is a quintessential police power, making it 'clear that [Defendants were] acting within the course and scope of [their] discretionary authority when [they] arrested [Plaintiff].'" *Majeroni v. Chatham Cnty. Bd. of Elections*, 765 F. Supp. 3d 1355, 1367-68 (S.D. Ga. 2025) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002); *see also Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (finding that it was "clear" the officer acted "within the course and scope discretionary authority when he charged and arrested [plaintiff]"). Moreover, the right to make an arrest carries with it the right to use some degree of physical force or threat thereof, and the typical arrest involves some force. *Lee*, 284 F.3d at 1200. The deputies were operating within their discretionary authority while arresting Tyler Vannewhouse.

Next, the Court considers whether the facts, viewed in the light most favorable to Tyler Vannewhouse, establish a constitutional violation by the deputies who arrested him. They do not. Tyler

Vannewhouse has admitted the following: "[he] was not 'beaten' by Effingham County Sheriff's deputies on December 5, 2021," that the deputies' "use of force on [him] was objectively reasonable under the circumstances," and that he kicked the K-9 in the face, causing it to bite his left foot. *See* doc. 34-1 at 3. To establish a Fourth Amendment excessive force violation, a Plaintiff must show that the force used to effect the seizure was objectively unreasonable. *See Vinyard*, 311 F.3d at 1346 ("An officer will be entitled to qualified immunity if his actions were objectively reasonable . . . .") (internal citation omitted). Tyler Vannewhouse's admissions make this showing impossible. As a result, the undersigned recommends that the deputy defendants be granted summary judgment on Count I and that the claim be dismissed.

### d. Richard Kirk Vannewhouse's § 1983 Fourth Amendment Claim (Count IX)

Plaintiff Kirk Vannewhouse claims that he was wrongfully arrested by Brooks because "[his] explanation for Kirk's arrest simply fails to contain any facts to justify that arrest." Doc. 1-1 at 9. Brooks has raised qualified immunity to Kirk's § 1983 claim. Doc. 34 at 16-19. As previously discussed, making arrests is within a sheriff's deputy's

discretionary authority.   Now, the Court considers whether Deputy Brooks violated the Constitution when he arrested Kirk Vannewhouse.

Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures."  U.S. Const. amend. IV.  In Fourth Amendment terminology, an arrest is a seizure of the person, and the "reasonableness" of the arrest is determined by the presence or absence of probable cause for the arrest.   *Skop, 485 F.3d at 1137*. "Probable cause to arrest exists when law enforcement officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."  *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002) (internal quotations omitted).  The probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003).  In evaluating whether qualified immunity applies, the Eleventh Circuit employs the "arguable probable cause" standard, which asks whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest."  *Lee*, 284 F.3d at 1195 (11th Cir.

2002). If the arresting officer has such arguable probable cause, qualified immunity applies.

Kirk has admitted that his arrest for obstruction was justified. *See* doc. 34-2 at 2. Because of Kirk's admission, he cannot show that Brooks lacked arguable probable cause to arrest him. Therefore, he cannot establish a constitutional violation for his arrest. The undersigned recommends that Deputy Brooks be granted summary judgment for Count IX and the claim dismissed, insofar as it presents a Fourth Amendment false arrest claim under § 1983. *See* doc. 20 at 17.

### e. Plaintiffs' *Monell* Claim (Count IV)

To establish their *Monell* claim against Sheriff McDuffie, Plaintiffs must show (1) that their constitutional rights were violated; (2) that the County had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the custom or policy was the "moving force" behind the violation. *See Doe v. Miami-Dade Cnty.*, 797 F. Supp. 2d 1296, 1308 (S.D. Fla. 2011) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The Vannewhouses' *Monell* claim fails to satisfy the first element. *See* sections II.c & II.d, *supra* (finding that Plaintiffs cannot establish a constitutional violation for their respective

claims).  Therefore, the undersigned recommends that Sheriff McDuffie be granted summary judgment on Count IV.

### III.    Plaintiffs' State Law Claims

#### a. Plaintiffs' Emotional Distress Claim (Count II)

Plaintiffs assert a generalized claim for "emotional distress," which Defendants construe as a claim for intentional infliction of emotional distress under Georgia law.  Doc. 1-1 at 5-6; *see also* doc. 34 at 23-25. Plaintiffs have not objected to this characterization, *see generally* docs. 45 & 46, so the Court adopts Defendants' construction.  To prevail on a claim for intentional infliction of emotional distress, Plaintiffs must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *McClendon v. Harper*, 826 S.E.2d 412, 420 (Ga. Ct. App. 2019).

The deputy Defendants have asserted the affirmative defense of official immunity.  *See* doc. 34 at 23.  "Under Georgia law, a public officer or employee may be personally liable only for [1] ministerial acts negligently performed or [2] acts performed with malice or an intent to injure."  *Grammens v. Dollar*, 697 S.E.2d 775, 777 (Ga. 2010) (internal quotation marks omitted) (quoting *Cameron v. Lang*, 549 S.E.2d 341, 344

(Ga. 2001)). Indeed, the immunity goes farther than that; unless the public employee acts maliciously or pursuant to a ministerial duty, he is immune not just from liability but also from suit based on the performance or nonperformance of his official functions. *Barnett v. Caldwell*, 809 S.E.2d 813, 847 (2018). The arrests of Kirk and Tyler Vannewhouse were discretionary acts made by the sheriff's deputies. *See Reed v. DeKalb Cnty.*, 589 S.E.2d. 584, 587 (Ga. Ct. App. 2003) (holding that the decision to effectuate a warrantless arrest is generally a discretionary act requiring personal judgment and deliberation on the part of the officer).

Therefore, the deputy Defendants are entitled to official immunity unless Kirk or Tyler can demonstrate that the officers acted with "malice or intent to injure" in arresting them. Actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. *See Wilson v. Cromer*, 356 S.E.2d. 213, 217 (Ga. Ct. App. 2020). Kirk's admissions preclude a finding of actual malice. The nexus of Kirk's claim is that he was arrested by Deputy Brooks without any justification. *See* doc. 1-1 at 9. However, he has conceded that his arrest for obstruction was justified, doc. 34-2 at 2. Because the arrest was justified and the

"public officer or employee's subjective feeling or mental state is irrelevant unless it prompts him or her to intend to do a legally unjustifiable action," no reasonable jury could find that Brooks acted with actual malice. *See Mercado v. Swoope*, 798 S.E.2d 291, 294 (Ga. Ct. App. 2017) (internal citations omitted). Tyler fails to present any evidence supporting a finding of actual malice on the part of his arresting deputies, *see generally* doc. 1-1 & doc. 46, and has admitted that the use of force against him was "objectively reasonable" under the circumstances, *see* doc. 34-1 at 3. In the absence of any evidence of malice, no reasonable jury would be able to find actual malice from any of the deputy Defendants in Tyler's arrest. As such, the undersigned recommends that the deputy Defendants be granted summary judgment for Count II and the claim dismissed.

### b. Kirk Vannewhouse's False Imprisonment Claim (Count IX)

Plaintiff Kirk Vannewhouse included allegations of a "wrongful arrest" against Deputy Brooks in his Complaint which this Court determined was sufficient to state a claim for false imprisonment under Georgia state law. Doc. 20 at 17. Deputy Brooks broadly asserts official immunity from suit for any claim arising from his arrest of Kirk. *See* doc.

34 at 21 ("Deputy Brooks' arrest of Kirk was plainly a discretionary act. . . . Thus, Deputy Brooks is entitled to official immunity unless Kirk can demonstrate that Deputy Brooks acted with actual malice.").  Brooks has borne his burden of showing that his warrantless arrest of Kirk was a discretionary act.  *See Reed*, 589 S.E.2d. at 587.  Therefore, Brooks is shielded by official immunity unless Kirk can show that Brooks acted with malice or intent to injure.  *See Grammens*, 697 S.E.2d at 777 (internal quotation omitted).

Kirk has admitted that his arrest was justified and has presented no evidence to suggest that Brooks acted with malice during the arrest. *See* section II.a, *supra*.  Based on those admissions, a reasonable jury would not be able to find that Deputy Brooks acted with actual malice while arresting Kirk Vannewhouse.  As a result, the undersigned recommends that Deputy Brooks be granted summary judgment for Kirk Vannewhouse's state law false imprisonment claim in Count IX and the claim dismissed.

## IV.  Plaintiffs' Derivative Claims: Punitive Damages (Count VII) & Attorney's Fees (Count VIII)

Plaintiffs seek attorney fees pursuant to state law and punitive damages.  Doc. 1-1 at 7-8.  If the District Judge adopts the recommended

23

disposition of the substantive claims, they are not entitled to either. Parties that fail to receive a judgment in their favor are not entitled to attorney fees under Georgia law. *See Azizan v. Hajianbarzi*, 903 S.E.2d 677, 680 (Ga. Ct. App. 2024) ("As a general rule, Georgia law does not provide for the award of attorney fees *even to a prevailing party* unless authorized by statute or by contract. When awarded by statute, such fees may be obtained only pursuant to the statute under which the action was brought and decided." (emphasis added)) (quoting *Suarez v. Halbert*, 543 S.E.2d 733, 735 (Ga. Ct. App. 2000)).

Plaintiffs' claims for punitive damages fail under both Georgia state law and § 1983. "Under Georgia law, a plaintiff cannot recover punitive damages when the underlying tort claim fails." *Johnson v. Johnson*, 747 S.E.2d 518, 523 (Ga. Ct. App. 2013) (citation and punctuation omitted). Because all of Plaintiffs state law torts fail, they cannot recover punitive damages under Georgia law. As for Plaintiffs' punitive damage claims under § 1983, they must establish that the Defendants were "motivated by an evil motive or intent, or there must be reckless or callous indifference to federally protected rights" to receive punitive damages. *Anderson v. Atlanta*, 778 F.2d 678, 688 (11th Cir. 1985) (citing *Smith v.*

*Wade*, 461 U.S. 30 (1983)).   As explained above, Plaintiffs have not established that any Defendant committed any constitutional violation, and Plaintiffs have not established that any of the requirements for punitive damages exist here.   Plaintiffs, therefore, are not entitled to punitive damages for their § 1983 claims against any of the Defendants.

## Conclusion

For these reasons, the undersigned recommends that Defendants' motion for summary judgment, doc. 34, be granted for all of Plaintiffs' remaining claims.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure

to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 30th day of June, 2025.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA